Opinion issued June 18, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00332-CR

__________


MARCUS ANDRE BRADLEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 9

Harris County, Texas

Trial Court Cause No. 1500451






MEMORANDUM OPINION

 Appellant, Marcus Andre Bradley, challenges the order of the county court at
law denying him the relief that he requested in his application for a writ of habeas
corpus. In his sole issue, appellant contends that the State's prosecution of him for
the offense of cruelty to animals, (1) after a justice court had, in a prior proceeding, (2)
terminated his ownership of 45 pit bull dogs and ordered him to pay $9,020 to the
Houston Humane Society for the boarding and care of the dogs, is barred under the
"doctrine[s] of double jeopardy[ (3)] and collateral estoppel." 

 We affirm the order of the trial court. 

Factual and Procedural Background In his application for a writ of habeas corpus, appellant asserted that the justice
court had previously imposed a "punishment" upon him by requiring that he forfeit
his 45 pit bull dogs and pay $9,020 for the boarding and care of the dogs. See Tex.
Health & Safety Code Ann. § 821.023 (Vernon Supp. 2008). Appellant also
asserted that the proceedings brought by the State against him in the justice court
under Chapter 821 of the Texas Health and Safety Code (4) constituted a "lesser-included offense" or an "identical" offense to that of the criminal offense of cruelty
to animals. See Tex. Penal Code Ann. § 42.092 (Vernon Supp. 2008). 

 Appellant attached to his application a copy of the "warrant for seizure of
animals" and the "order of disposition" issued in the justice court proceedings. The
warrant directed the Harris County Sheriff to seize the 45 pit bull dogs and impound
them at the Houston Humane Society. It further directed appellant to appear before
the justice court at a hearing on July 6, 2007 to determine whether the dogs had been
cruelly treated or abandoned. See Tex. Health & Safety Code Ann. §§
821.022-023 (Vernon Supp. 2008). In its order of disposition, the justice court found
that appellant, as the owner of the dogs, had "cruelly treated and/or not provided
proper nutrition/food, shelter and/or veterinary care" to the dogs and should be
divested of ownership of the dogs and pay $9,020 to the Houston Humane Society for
the boarding and care of the dogs. See id.

 At the hearing on appellant's application in the county court at law, Harris
County Deputy Constable M. Timmons testified that after the Houston Police
Department had received a complaint about a dangerous dog that had attacked some
individuals in a neighborhood, he was contacted to assist in the investigation. 
Officers found the dog, pursued it back to a fenced location, and then saw
approximately 40 pit bull dogs chained in a fenced, vacant lot. Timmons noted that
the living conditions of the dogs were not "suitable" and, citing Chapter 821 of the
Texas Health and Safety Code, "there was enough probable cause to proceed on a
civil hearing in the [justice] court to have the animals removed from the property." 
Timmons explained that the dogs were restrained by heavy chains and collars, which
caused swollen necks and hair loss. Timmons, at the scene, met with appellant, who
admitted that he owned the dogs. Based upon his observations, Timmons obtained
a civil warrant through the justice court to seize the dogs. Timmons noted that he had
previously appeared at the hearing in the justice court and had generally testified that
the dogs had been cruelly treated. Appellant then introduced into evidence the
warrant and order of disposition. 

 Charles Walker, an assistant Harris County Attorney, testified that he had
appeared at the justice court hearing on behalf of the State. Walker explained that by
presenting the testimony of Deputy Timmons and a veterinarian at the justice court
hearing, he had proved that appellant had been cruelly treating the animals. In
response to appellant's questioning, Walker explained that the justice court had not
imposed a "fine," but rather had required appellant to pay for the animal care. See id.
§ 821.023(e). Walker further noted that he had "no criminal authority whatsoever"
in bringing the civil proceedings in the justice court and that proceedings brought
under the Texas Health and Safety Code are "strictly civil," so "we can give no
fines." (5) On cross-examination by the State, Walker agreed that the purpose of the
justice court proceeding was to seize the dogs and that the definition of animal cruelty
is different in the Texas Health and Safety Code than it is in the Texas Penal Code.
He also noted that under the Texas Penal Code, the State must prove "intent or
knowledge" to obtain a conviction and, on the "civil side," intent or knowledge need
not be proved to seize cruelly treated animals. Double Jeopardy

 In his sole issue, appellant argues that the State's prosecution of him for the
offense of cruelty to animals is barred under the "doctrine[s] of double jeopardy and
collateral estoppel" (6) because the justice court had already entered an "order of
disposition" terminating his ownership of the 45 pit bull dogs and requiring that he
pay $9,020 to the Houston Humane Society for the boarding and care for the dogs. 
 The doctrine of collateral estoppel has no application under the present
circumstances. The doctrine of collateral estoppel "prevents a party who lost a fact
issue in the trial of one cause of action from relitigating the same fact issue in another
cause of action against the same party." See Ex parte Taylor, 101 S.W.3d 434, 440
(Tex. Crim. App. 2002). Here, the State did not lose on a fact issue in the justice
court proceedings. In fact, the State prevailed in the justice court proceedings, and
this disposition is the basis of appellant's complaint in the county court at law that he
was being subjected to multiple punishments. None of the authorities cited by
appellant apply the collateral estoppel doctrine in the fashion that appellant requests. 
Accordingly, we hold that the county court at law did not err in denying appellant the
relief he requested on the ground that the State should be collaterally estopped from
prosecuting him for the offense of cruelty to animals. 

 In regard to double jeopardy, the United States Constitution provides, "[N]or
shall any person be subject for the same offense to be twice put in jeopardy of life or
limb." U.S. Const. amend. V, cl. 2. The Double Jeopardy Clause of the Texas
Constitution provides, "[N]o person, for the same offense, shall be twice put in
jeopardy of life or liberty, nor shall a person be again put upon trial for the same
offense, after a verdict of not guilty in a court of competent jurisdiction." (7)
 Tex.
Const. art. I, § 14. 

 Generally, there are three types of double jeopardy claims: (1) a second
prosecution for the same offense after an acquittal; (2) a second prosecution for the
same offense after a conviction; and (3) multiple punishments for the same offense. 
Langs v. State, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). All three types of
double jeopardy claims arise only when duplicative prosecutions or punishments
involve the same offense. See id. Here, as noted above, appellant asserts that he is
being subjected to two criminal punishments under "identical facts," i.e., the dogs
were not provided proper nutrition, shelter, and veterinary care by appellant. The
United States Supreme Court has explained that "[w]hether a particular punishment
is criminal or civil is, at least initially, a matter of statutory construction" and that "[a]
court must first ask whether the legislature, in establishing the penalizing mechanism,
indicated either expressly or impliedly a preference for one label or the other." 
Hudson v. United States, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997). 

 The provisions in subchapter B of Chapter 821 of the Texas Health and Safety
Code, and specifically sections 821.022-023, are civil in nature. See Chambers v.
State, 261 S.W.3d 755, 759 (Tex. App.--Dallas 2008, pet. denied) (noting that State
had filed "animal cruelty case pursuant to [C]hapter 821 of the health and safety code
dealing with the health and safety of animals, not as a crime" under Texas Penal Code
sections 42.09 and 42.10); Granger v. Folk, 931 S.W.2d 390, 392 (Tex.
App.--Beaumont 1996, pet. denied) (stating that "[c]learly, two avenues exist for the
State in protecting animals from cruel treatment, i.e., criminal prosecution under . . .
the [Texas] Penal Code and the civil remedy provided under [s]ection 821.023 of the
[Texas] Health and Safety Code"). In fact, section 821.023 expressly contemplates
the possibility of criminal proceedings brought subsequent to civil proceedings. See
Tex. Health & Safety Code Ann. § 821.023(b) (Vernon Supp. 2008) ("A statement
of an owner made at a hearing provided for under this subchapter is not admissible
in a trial of the owner for an offense under Section 42.09 or 42.092, Penal Code.");
see also Granger, 931 S.W.2d at 392 (stating that section 821.023(a) "presumes a
criminal proceeding prior to the civil proceeding while [section 821.023(b)] presumes
the reverse" and that in criminal proceedings under Texas Penal Code "a defendant
may face loss of freedom or fine or both, whereas, a proceeding under [s]ection
821.023 may subject the defendant to a loss, forfeiture and confiscation of property
rights and interests."). 

 We recognize that the United States Supreme Court has explained that, "even
in those cases where the legislature has indicated an intention to establish a civil
penalty, a court must inquire further whether the statutory scheme is so punitive either
in purpose or effect as to transform what was clearly intended as a civil remedy into
a criminal penalty." Capps v. State, 265 S.W.3d 44, 49 (Tex. App.--Houston [1st
Dist.] 2008, pet. ref'd) (citing Hudson, 522 U.S. at 99, 118 S. Ct. at 493)). In making
this determination, a court should consider (1) whether the sanction involves an
affirmative disability or restraint; (2) whether it has historically been regarded as a
punishment; (3) whether it comes into play only on a finding of scienter; (4) whether
its operation will promote the traditional aims of punishment--retribution and
deterrence; (5) whether the behavior to which it applies is already a crime; (6)
whether an alternative purpose to which it may rationally be connected is assignable
for it; and (7) whether it appears excessive in relation to the alternative purpose
assigned. Hudson, 522 U.S. at 99-100, 118 S. Ct. at 493; see also Capps, 265
S.W.3d at 49 (applying Hudson factors and concluding that disciplinary actions
brought against attorney did not constitute criminal punishment to bar subsequent
criminal proceedings); see also Ex parte Sheridan, 974 S.W.2d 129, 132 (Tex.
App.--San Antonio 1998, pet. denied) (applying Hudson factors and finding that
cancellation of alcoholic beverage license by regulatory commission did not
constitute punishment and, thus, double jeopardy protections did not bar license
holder's subsequent prosecution for his making of false statements on license
application). However, "these factors must be considered in relation to the statute on
its face, and only the clearest proof will suffice to override legislative intent and
transform what has been denominated a civil remedy into a criminal penalty." 
Hudson, 522 U.S. at 100, 118 S. Ct. at 493 (citations omitted) (emphasis added).

 Applying the factors, we first note that the seizure of appellant's dogs and the
order requiring that he pay for their care while boarded at the Houston Humane
Society did not "involve an affirmative disability or restraint" upon appellant. 
Second, the civil provisions of subchapter B of Chapter 821, which were enacted for
the protection of animals, have not been historically regarded as "punishment" against
the owners of animals. Third, as explained by the county attorney at the hearing on
appellant's application, and as is evidenced by the order of disposition, no finding of
scienter is required under Chapter 821. See Capps, 265 S.W.3d at 51 (noting that
"there is no general requirement of scienter in the disciplinary rules"). Fourth,
although proceedings brought under chapter 821 to seize cruelly treated animals "may
offer some amount of deterrence--a traditional goal of criminal punishment--the
mere presence of this purpose is insufficient to render" these proceedings and the
resulting order divesting ownership and requiring payment for animal care to be
criminal punishment. See id. at 52. Fifth, although the cruel treatment of animals
may give rise to criminal proceedings, "this fact is insufficient to render" the remedies
afforded under section 821.023 as "criminally punitive." See id.; see also Ex parte
Sheridan, 974 S.W.2d at 134 ("It is well settled that the legislature may impose both
a criminal and a civil sanction in respect to the same act or omission."). Finally, as
noted above, proceedings brought under subchapter B of Chapter 821 and the
remedies authorized therein are designed to protect animals from cruel treatment, and
neither divesting a party from the ownership of cruelly treated animals nor requiring
the payment of money for their care are excessive to this purpose. 

 In sum, we conclude that "there is little evidence, much less the clearest proof,"
that the justice court's order of disposition terminating appellant's ownership of the
dogs and requiring that he pay for their care was so punitive either in purpose or
effect as to transform the civil action and remedies imposed into a criminal
punishment. See Capps, 265 S.W.3d at 50-51. Accordingly, we hold that the State's
subsequent criminal prosecution of appellant for the criminal offense of cruelty to
animals does not violate the double jeopardy prohibitions of the United States and
Texas Constitutions. Accordingly, we further hold that the county court at law did
not err in denying appellant the relief that he requested on the ground that the
prosecution violates the double jeopardy prohibitions. 

 We overrule appellant's sole issue.






Conclusion

 We affirm the order of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Penal Code Ann. § 42.092 (Vernon Supp. 2008). 
2. Trial Cause No. CV620006208 (Justice Ct., Precinct 6, Place 2, Harris County, Tex.).
3. See U.S. Const. amend. V; Tex. Const. art. I, § 14.
4. See Tex. Health & Safety Code Ann. §§ 821.001-821.081 (Vernon Supp. 2008).
5. Appellant's counsel even agreed on the record that the payment ordered by the justice
court did not constitute a "fine." In fact, after appellant's counsel initially referred to
this payment as a "fine," he then corrected himself and referred to it as a "monetary
assessment." 
6. Although appellant refers to a document entitled "Special Plea of Double
Jeopardy/Collateral Estoppel," no such document appears in the record. Rather, the
record contains only a copy of the application for writ of habeas corpus.
7. The Texas Constitution has been construed to give no greater protection than the
United States Constitution in regard to double jeopardy. Johnson v. State, 920 S.W.2d
692, 693 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd) (citing Stephens v. State,
806 S.W.2d 812, 815 (Tex. Crim. App. 1990)). Thus, a bifurcated analysis is not
necessary. Capps v. State, 265 S.W.3d 44, 49 n.9 (Tex. App.--Houston [1st Dist.]
2008, pet. ref'd).